**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **No. CR 09-468-TUC-RCC [CRP]** |
| Plaintiff, ) | |
| vs. ) | |
| WILLIE EDWARD FREEMAN, ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

On February 27, 2009, Defendant was charged with knowingly and intentionally possessing with intent to distribute approximately 64 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  (Doc 1).  Defendant filed a motion to suppress and requested disclosure of canine certification and training records. (Doc 15).  The Government opposed the motion to suppress but provided Defendant with the requested disclosure.  A hearing on the motion to suppress was held before Magistrate Judge Pyle on May 11, 2009. For the reasons discussed below, this Court recommends that the District Judge, after his independent review and consideration, enter an order DENYING the motion to suppress.

1  **FACTS**

2      Based on the testimony at the hearing Defendant's vehicle was stopped at a temporary

3  immigration checkpoint located on Arizona State Route 90 at approximately mile-marker

4  304, near Whetstone, Arizona.  Border Patrol has operated the checkpoint for the past year

5  and all vehicles must stop at the checkpoint.  On the day Defendant's vehicle was stopped,

6  six agents were working at the checkpoint.

7      Two of those agents testified at the hearing.  The first agent to testify was Agent

8  Miguel Vera.  Agent Vera testified he has worked the past fifteen months for Border Patrol.

9  On the day Defendant's vehicle was searched, Agent Vera was working in the checkpoint's

10  primary inspection area.  The second agent who testified was Agent Eduardo Gonzalez.

11  Agent Gonzalez has worked in Border Patrol for fifteen and a half years.  In the last two and

12  a half years, he has worked as a certified canine handler.  Agent Gonzalez also testified that

13  he was recently accepted into a program to become a certified canine handler instructor.  The

14  Court found both agents to be reliable and both agents provided helpful testimony.

15      On February 26, 2009, around 1:30 p.m., Agent Gonzalez was working "pre-primary"

16  at the Border Patrol checkpoint.  Agent Gonzalez and his canine, Kitty-A, were working as

17  the canine team at the checkpoint.  As part of his responsibilities in pre-primary, Agent

18  Gonzalez walked Kitty-A around vehicles that were waiting and slowly approaching the stop

19  sign located in the primary inspection area.  Kitty-A is trained to detect the scent from

20  marijuana, cocaine, heroine, methamphetamine and the derivatives of those illegal narcotics

21  as well as illegal aliens.  The canine team of Agent Gonzalez and Kitty-A were working pre-

22  primary to detect possible illegal narcotics or aliens.

23      While Agent Gonzalez was working in pre-primary, Defendant's Dodge minivan

24  approached the checkpoint.  When Defendant's minivan entered the pre-primary area Agent

25  Gonzalez walked Kitty-A around the vehicle.  Agent Gonzalez testified that Kitty-A began

26  to alert toward the back of Defendant's minivan and then continued alerting as she moved

27  forward toward the open window on the driver's side of Defendant's minivan.  Agent

28  Gonzalez described Kitty-A's alert as a change in body posture from calm to excited and a

1    respiratory change in which Kitty-A began to breath out of her nose.

2         Defendant continued to drive his vehicle and proceeded into the primary inspection
3    area.  As part of his duties on that day, Agent Vera was working in the primary inspection
4    area.  It was his responsibility to make contact with all the drivers traveling through the
5    checkpoint and either give them permission to continue their travels or direct them to
6    secondary inspection.  After Kitty-A alerted to Defendant's minivan, Agent Gonzalez
7    instructed Agent Vera to send the minivan to secondary inspection.

8         Agent Vera told Defendant to drive his van to the secondary inspection and Defendant
9    complied.  Agent Vera testified that Defendant was in primary inspection for thirty seconds
10   to a minute before Agent Vera instructed him to go to secondary inspection.  Agent Vera
11   followed the van over to secondary inspection and requested Defendant's identification and
12   then requested Defendant to exit the vehicle.  Defendant complied and Agent Vera noticed
13   Defendant's hand was visibly shaking and Defendant was shouting answers.

14        During that time, Agent Gonzalez waited for approximately three or four more cars
15   to pass through primary inspection before walking Kitty-A over to the minivan.  In secondary
16   inspection, Agent Gonzalez attempted to walk Kitty-A around Defendant's minivan.  Kitty-A
17   again alerted to the back of the minivan and indicated by sitting at the liftgate at the back of
18   the minivan.

19        At that point, Agent Gonzalez walked Kitty-A to her kennel and then returned to
20   secondary inspection to ask Defendant some questions.  Defendant admitted the minivan was
21   his vehicle and that the belongings in the van were his but that he recently had the van
22   painted.  Agent Gonzalez then opened the liftgate of Defendant's minivan and under some
23   fishing poles and camping chairs, Agent Gonzalez discovered duffel bags.  The duffel bags
24   contained marijuana.  When cross-examined, Agent Gonzalez stated he did not smell
25   marijuana at the driver's window nor at the back of the minivan but he did discover four air
26   freshners in the vehicle as well as a piece of cardboard soaked in air freshner liquid and
27   placed under the duffel bags.  According to Agent Gonzalez, approximately five to ten
28   minutes passed between the time Agent Vera instructed Defendant to drive his vehicle to

1  secondary inspection and the time Agent Gonzalez began a search of Defendant's minivan.

2  In addition to the two agents who testified, the Government also called the agent in

3  charge of Border Patrol's canine units in the Tucson sector.  Agent Mike Lawler is the

4  Border Patrol Canine Coordinator for the Tucson Sector.  Agent Lawler testified as a

5  custodian of Agent Gonzalez and Kitty-A's training and certification records.  Agent Lawler

6  has been a canine handler since September 2004 and a canine training instructor since 2006.

7  Agent Lawler testified all canine teams, the canine and handler in combination, must be

8  certified before working in the field and that canine teams must be re-certified annually.

9  Agent Lawler described the certification and training processes to the Court.  During

10 certification the handler and canine must search a variety of environments including the

11 interior and exterior of cars, luggage, open fields, residences, livestock environments, and

12 businesses.  In all of the certification searches, both the handler and canine receive a score.

13 The possible score range is between a 1 and 6 with a one being the best score and a six being

14 lowest score.  The total combined scores must be below a 3.5 for the canine team to be

15 certified.  Agent Lawler testified that any time a canine gives a false alert, meaning the dog

16 alerts when illegal contraband is not present, a score of six is received.  After certification,

17 the canine team participates in bi-weekly training in which tests similar to those in

18 certification are employed.

19 The Government provided the certification and training records for the canine team

20 of Agent Gonzalez and Kitty-A.  Agent Lawler then testified that the certification records

21 and training records did not contain a score of six for the canine team of Agent Gonzalez and

22 Kitty-A.  As the certification records indicate, Agent Gonzalez and Kitty-A received a total

23 certification score of 2.66.  Agent Lawler testified that Agent Gonzalez and Kitty-A never

24 attended remedial training and that they were a reliable canine team.

25 **ANALYSIS**

26 At issue in this case is whether Border Patrol agents violated the Fourth

27 Amendment when they searched Defendant's minivan.  The United States Supreme Court

28 has held brief stops at immigration checkpoints are constitutional.  *United States v.*

1    *Martinez-Fuerte*, 428 U.S. 543, 555 (1976).  While the *Martinez-Fuerte* Court spoke

2    specifically to permanent checkpoints, the Ninth Circuit subsequently determined

3    temporary checkpoints that are the functional equivalent to permanent checkpoints are

4    constitutional.  *United States v. Hernandez*, 739 F.2d 484, 487 (9th Cir.1984).  The stop

5    in *Hernandez* was at a temporary checkpoint but the Ninth Circuit applied the *Martinez-*

6    *Fuerte* standard because all the factors stressed in *Martinez-Fuerte* were also present at

7    the temporary checkpoint set up in *Hernandez*.  *Id*. (The procedure employed to stop

8    vehicles was routinely and evenly applied to all vehicles; it involved little officer

9    discretion and it was not likely to result in abusive or harassing stops.  Furthermore, the

10   appearance of authority of the officers manning the checkpoint allayed the concerns of

11   lawful travelers).

12        At immigration checkpoints, Border Patrol agents can stop vehicles without any

13   reason to believe a particular vehicle contains any contraband.  *Martinez-Fuerte*, 428 U.S.

14   at 545.  To send a vehicle from primary inspection to secondary inspection an agent needs

15   only a showing of "an articulable suspicion or minimal showing of suspicion."  *United*

16   *States v. Taylor*, 934 F.2d 218, 221 (9th Cir.1991).  An articulable suspicion is less than

17   the reasonable suspicion standard.

18        In the case before this Court, the temporary immigration checkpoint was the

19   functional equivalent of a permanent checkpoint and the *Martinez-Fuerte* standard

20   applies.  The visibility of the checkpoint, its appearance, and presence of numerous

21   border patrol agents in uniform communicated to the motorists that the stop was officially

22   authorized.  Thus, Border Patrol agents did not need any reason to believe Defendant's

23   minivan contained illegal contraband when they required Defendant to slowly move

24   through pre-primary inspection and the canine team walked around the vehicle.

25        When Kitty-A alerted to the minivan, Border Patrol agents developed more than

26   the necessary suspicion to send Defendant's vehicle to secondary inspection and then

27   search his vehicle.  An "alert" by a certified, reliable narcotics detector dog is sufficient,

28   even by itself, to support a finding of probable cause.  *United States v. Cedano-Arellano*,

1   332 F.3d 568, 573 (9th Cir.2003) (internal citation omitted), *cert. denied Cedano-*

2   *Arellano v. United States*, 540 U.S. 1137 (2004).  The Government provided certification

3   records and training records for the canine team of Agent Gonzalez and Kitty-A.  The

4   Government also provided the testimony of Agent Lawler as the coordinator of the canine

5   units in the Tucson sector.  The evidence indicates Kitty-A was a reliable narcotics

6   detector and Border Patrol agents had the necessary suspicion to search Defendant's

7   vehicle.

8   **RECOMMENDATION**

9   For the reasons outlined above, the Magistrate Judge recommends that the District

10   Judge after his independent review and analysis, DENY Defendant's Motion to Suppress.

11   (Doc 15).

12   Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections

13   within ten days of being served with a copy of the Report and Recommendation.  If

14   objections are not timely filed, they may be deemed waived.  The parties are advised that

15   any objections filed are to be identified with the following case number: **cr-09-468-RCC**.

16   The Clerk is directed to mail a copy of the Report and Recommendation to

17   Plaintiff and counsel for Defendant.

18   DATED this 14th day of May, 2009.

19

20

21   **CHARLES R. PYLE**

22   UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28